UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

MARCIE MARINO,

               Plaintiff,

-against-

SHOREHAM-WADING RIVER CENTRAL
SCHOOL DISTRICT, HARRIET COPEL,
Superintendent of Schools, and
SUZANNE CHRISTENSEN,

               Defendants.
----------------------------------------X

CV-08-0825 (SJF)(WDW)

**OPINION & ORDER**

FEUERSTEIN, J.

On February 27, 2008, plaintiff Marcie Marino ("plaintiff"), commenced this civil rights action against defendants Shoreham-Wading River Central School District (the "School District"), Harriet Copel and Suzanne Christensen (collectively, "defendants"), pursuant to 42 U.S.C. § 1983, alleging constitutional violations arising from defendants' imposition of a "Teacher Improvement Plan" ("TIP") upon plaintiff. Defendants now move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety. For the reasons stated herein, defendants' motion is granted.

I.    Background[1]

---

[1] As is required on a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations in the complaint, though disputed by defendants, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of plaintiff. They do not constitute findings of fact by this court.

1

Plaintiff is a tenured teacher employed by the School District to teach English to students in grades seven (7) through twelve (12). (Complaint [Compl.], ¶ 8). At all relevant times, Copel was the superintendent and Christensen was an administrator of the School District. (Compl., ¶¶ 5-7).

In July 2007, Christensen created a written TIP to be imposed upon plaintiff during the course of the 2007-2008 school year. (Compl., ¶ 9; Ex. A). The TIP, *inter alia*, identified specific behavior plaintiff was expected to change, including structuring her lessons "in a manner that leads to high levels of learning for all;" returning student work with appropriate feedback and grade in a timely manner; marking attendance appropriately and following up with the necessary procedures; supervising her students at all times; supplying work for students on home instruction in a timely manner and responding promptly to parents and tutors; arriving on time for her professional duties; following appropriate test administration procedures; and improving her attendance, notifying the substitute agency within a reasonable amount of time when she needed to be absent, and supplying plans for the substitute teacher. (Compl., Ex. A). The TIP also provided a timeline within which plaintiff was expected to accomplish the required changes and specified, *inter alia*, that plaintiff would be monitored regularly for compliance. (Id.). In addition, the TIP identified "multiple resources" available to assist plaintiff's compliance, including periodic meetings with the administration; frequent unannounced observations by the administration of plaintiff's instructions in order to make recommendations; permission for plaintiff to attend workshops and/or conferences; and encouragement for plaintiff to consult the Employee Assistance Program ("EAP") if or when needed. (Id.). According to plaintiff, the "periodic meetings" provided by the TIP have been held weekly during her personal time.

(Compl., ¶ 21).

Plaintiff alleges (1) that the measures imposed upon her by the TIP were "punitive and arbitrary and capricious," (Compl., ¶¶ 11, 16, 20, 23-27); (2) that the TIP was not created in compliance with the New York State Education Commissioner's Regulations, 8 N.Y.C.R.R. § 100.2(o)(2)(iii) and (o)(2)(viii)(4) and (5), requiring the School District to adopt a "District-Wide Plan" for the evaluation of the annual performance of its teachers, (Compl., ¶¶ 12-16); and (3) that the TIP was created as a result of defendants' decision that plaintiff engaged in misconduct without notice to plaintiff or an opportunity for a hearing in violation of New York Education Law § 3020 ("Section 3020"), (Compl., ¶¶ 17-20). In addition, plaintiff contends that the language in the TIP which encouraged her to consult the EAP "wrongfully, arbitrarily, capriciously indicated that Defendants concluded that Plaintiff had personal problems for which [the EAP] exists," when she never disclosed that any personal problems existed. (Compl., ¶ 22). According to plaintiff, that language in the TIP conveyed to her that she must enlist in the EAP as a condition of continued employment in the School District. (Id.).

B. Procedural History

On February 27, 2008, plaintiff commenced this action against defendants pursuant to 42 U.S.C. § 1983 alleging that defendants' imposition of the TIP on her (1) "wrongfully and arbitrarily and capriciously deprived Plaintiff of her terms and conditions of employment," in violation of her due process rights under the Fifth and Fourteenth Amendments to the United States Constitution (first cause of action); and (2) "wrongly and arbitrarily singled [plaintiff] out" for action in violation of her equal protection rights under the Fourteenth Amendment (second

3

cause of action).

II. Discussion

A. Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). A "formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic, 550 U.S. 544, 127 S.Ct. at 1959. Accordingly, the applicable standard on a motion to dismiss pursuant to Rule 12(b)(6) requires, at least, allegations "plausibly suggesting (not merely consistent with)," liability. Williams v. Berkshire Financial Group, Inc., 491 F.Supp.2d 320, 324 (E.D.N.Y. 2007).

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See, Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44 (2d Cir. 2003); see also Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007). The Court must limit itself to the facts alleged in the complaint, which are accepted as true, to any documents attached to the complaint as exhibits or incorporated by reference therein, to matters of which judicial notice

4

may be taken, or to documents within plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit. See, Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993). Since plaintiff attached the TIP to the complaint, it is properly considered on defendants' motion to dismiss.

B.  Due Process Claim

Defendants contend that plaintiff was not entitled to a hearing pursuant to New York Education Law § 3020-a ("Section 3020-a") because the TIP was not "a reprimand, a fine, suspension for a fixed time without pay, or dismissal" within the meaning of that statute and, thus, plaintiff cannot establish a due process violation. According to defendants, the TIP is a plan to improve plaintiff's performance created by her immediate supervisor and is not a reprimand. Plaintiff contends that the TIP constitutes a performance evaluation and recites specific charges alleging teacher incompetency and misconduct by plaintiff and, thus, the District was obligated to follow the due process procedures set forth in Section 3020-a. According to plaintiff, the establishment of a timeline within which to comply with the TIP and the continued monitoring, scheduling of meetings and issuance of quarterly progress reports for which the TIP provides constitute disciplinary measures because they are procedures to which other teachers in the School District are not subjected.

Generally, due process entitles a person to notice and an opportunity to be heard prior to the deprivation of a property or liberty right. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Procedural due process claims are analyzed in two steps: "the first asks whether there exists a liberty or property interest which has

5

been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally significant." Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). To state a due process cause of action, a plaintiff must first show that he or she has a property interest in the employment or the benefit that was removed. Bernheim v. Litt, 79 F.3d 318, 322 (2d Cir. 1996). "Property interests * * * are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law * * *." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Although plaintiff clearly has a property right in her employment as a tenured teacher, she is not alleging a deprivation of that property interest. Thus, in order to state a due process claim, plaintiff must allege the deprivation of some other property or liberty right. In essence, plaintiff's first cause of action alleges that Section 3020 created a property or liberty right and that defendants' violation of Section 3020-a deprived her of that right without due process.

Section 3020(1) provides that "[n]o person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article * * *."

Section 3020-a provides, in pertinent part

> " 1. All charges against a person enjoying the benefits of tenure * * * shall be in writing and filed with the clerk or secretary of the school district or employing board during the period between the actual opening and closing of the school year for which the employed is normally required to serve. * * *
>
> 2. (a) Disposition of charges. Upon receipt of the charges, the clerk or secretary of the school district or employing board shall immediately notify said board thereof. Within five days after receipt of charges, the employing board, in executive session, shall determine, by a vote of a majority of all the members of such board,

6

whether probable cause exists to bring a disciplinary proceeding against an employee pursuant to this section. If such determination is affirmative, a written statement specifying the charges in detail, the maximum penalty which will be imposed by the board if the employee does not request a hearing or that will be sought by the board if the employee is found guilty of the charges after a hearing and outlining the employee's rights under this section, shall be immediately forwarded to the accused employee by certified or registered mail, return receipt requested or by personal delivery to the employee.

\* \* \*

(c) Within ten days of receipt of the statement of charges, the employee shall notify the clerk or secretary of the employing board in writing whether he or she desires a hearing on the charges and when the charges concern pedagogical incompetence or issues involving pedagogical judgment, his or her choice of either a single hearing officer or a three member panel. All other charges shall be heard by a single hearing officer.

(d) \* \* \* Where an employee requests a hearing in the manner provided for by this section, the clerk or secretary of the board shall, within three working days of receipt of the employee's notice or request for a hearing, notify the commissioner of education of the need for a hearing. \* \* \*

Thus, Section 3020-a requires that prior to any "written reprimand, a fine, suspension for a fixed time without pay, or dismissal," Section 3020-a(4), a tenured teacher be notified in writing of the charges against him or her and be afforded the opportunity for a hearing.

While the statute's prohibition against written reprimands, fines, suspensions for a fixed time without pay or dismissals without written charges and a hearing are sufficient to create a protected property interest in a hearing before any of those actions are taken, see, e.g. Verri v. Nanna, 972 F.Supp. 773, 799 (S.D.N.Y. 1997) ( holding that a state statute containing mandatory language forbidding fine, reprimand and/or dismissal without written charges, an investigation and a hearing was sufficient to create a protected liberty interest in a hearing before being reprimanded), plaintiff does not claim that she was suspended without pay, fined or dismissed.

7

Thus, the issue before this Court is whether the issuance of the TIP constitutes a "written reprimand" sufficient to trigger the procedural safeguards of Section 3020-a. If the TIP does not constitute a written reprimand within the meaning of Section 3020-a, plaintiff cannot establish that defendants interfered with a liberty or property right and, thus, she cannot establish a *prima facie* due process claim.

In Holt v. Board of Education of Webutuck Central School District, 52 N.Y.2d 625, 439 N.Y.S.2d 839, 422 N.E.2d 499 (1981), the New York Court of Appeals held that the procedural requirements of Section 3020-a did not apply to letters placed in two tenured teachers' personnel files, which were critical of the respective teachers' performance, as those letters were "nothing more that administrative evaluations which the supervisory personnel of the school district have the right and the duty to make as an adjunct to their responsibilities to supervise the faculty of the schools." Id. at 631, 439 N.Y.S.2d 839. The Court further held:

> "while the protection afforded teachers by section 3020-a is quite broad, it should not * * * be read as insulating tenured teachers from all written critical comment from their supervisors. The purpose of the statute is to protect teachers from arbitrary imposition of formal discipline. It was not intended to interfere with the day-to-day operation of the educational system in which administrative evaluation of a teacher's performance plays an important part."

Id. at 632, 439 N.Y.S.2d 839. Finding that the letters at issue constituted critical administrative evaluations, notwithstanding language that might appear to be in the nature of a reprimand, the Court noted that the purpose of the letters was to warn and instruct, not to punish, and that they were issued by a single administrator. Id. at 633, 439 N.Y.S.2d 839.

The factors to be considered in determining whether a document constitutes a critical administrative evaluation or a disciplinary reprimand include:

8

> "Whether the letter is from the teacher's supervisor or from the board of education; whether the letter is directed towards an improvement in performance or is a formal reprimand for prior misconduct; whether the letter is in the nature of a performance evaluation or a castigation for misconduct; and the severity of the misconduct and of the admonition or reprimand."

Gutman v. Board of Education of City School District of City of New York, 18 Misc.3d 609, 614, 852 N.Y.S.2d 658 (N.Y. Sup. Ct. 2007) (quoting Appeal of Richardson, 24 Ed. Dept. Rep. 104, 106 (Decision 11, 333)).

Although the TIP infers that plaintiff's pedagogical competence and judgment were deficient in some areas and is critical of her performance, the purpose of the TIP was to call plaintiff's attention to those areas of her performance which needed improvement and to encourage her compliance with school policies and use of available resources in the future. In addition, since the TIP is only from Christensen, plaintiff's immediate supervisor, it represents only one administrator's view of plaintiff's performance, not a formal finding of misconduct. Moreover, the TIP does not identify any prior misconduct on the part of plaintiff or castigate her for any such misconduct. Therefore, the TIP is a critical administrative evaluation, not a disciplinary reprimand. See, e.g. Holt, 52 N.Y.2d 625, 439 N.Y.S.2d 839; O'Connor v. Sobol, 173 A.D.2d 74, 77, 577 N.Y.S.2d 716 (3rd Dept. 1991) (finding that a letter commenting on the petitioner's "poor judgment" in the classroom and directing future action on the part of the petitioner amounted to nothing more than an administrative evaluation and was properly included in the petitioner's personnel file without resort to the formal procedures set forth in Section 3020-a since it did not impose a punishment, but merely reminded the petitioner of school rules); Tebordo v. Cold Spring Harbor Central School District, 126 A.D.2d 542, 543, 510 N.Y.S.2d 665 (2d Dept. 1987) (finding that the letters of reprimand placed into the petitioner's personnel file

fell within the permissible range of administrative evaluation and fell short of the formal reprimand contemplated by Section 3020-a); Grennan v. Nassau County, No. 04-cv-2158, 2007 WL 952067, at * 16 (E.D.N.Y. Mar. 29, 2007) (finding that the placement of a critical letter in the plaintiff's file did not entitle her to the procedural safeguards set forth in Section 3020-a); see also Tomaka v. Evans-Brant Central School District, 107 A.D.2d 1078, 486 N.Y.S.2d 546 (4th Dept. 1985), aff'd, 65 N.Y.2d 1048, 494 N.Y.S.2d 697, 484 N.E.2d 1049 (1985) (holding that the procedural requirements of N.Y. Civil Service Law § 75, which is analogous to the requirements of Section 3020-a, did not apply to a letter admonishing the plaintiff, a senior clerk stenographer, for insubordinate action); Verri, 972 F.Supp. at 800 (holding that the placement of a deficiency notice in a police officer's personnel file without a hearing did not violate Section 5711-q of the Unconsoldiated Laws of New York, which is analogous to Section 3020-a). Sections 3020 and 3020-a do not provide a source that would afford plaintiff a property or liberty interest in not having the TIP imposed upon her. See, e.g. Verri, 972 F.Supp. at 800 (holding that Section 5711-q did not serve as a source that would afford the plaintiff a liberty interest in not having deficiency notices placed in his file). Accordingly, plaintiff was not entitled to the procedural protections of Section 3020-a. Since plaintiff has not identified any other source of a protected property or liberty interest, the complaint fails to state a procedural due process claim. Thus, the branch of defendants' motion seeking dismissal of plaintiff's due process claim (first cause of action) is granted and that claim is dismissed.

C. Equal Protection Claim

Defendants contend that plaintiff's equal protection claim fails because she has not

identified any statutory classification or governmental activity which has resulted in invidious discrimination. Plaintiff's contends that defendants selectively imposed the TIP upon her and not upon any other teacher in the District.

The Equal Protection Clause requires that the government treat all similarly situated individuals alike. City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Typically, equal protection claims involve "governmental classifications that 'affect some groups of citizens differently than others.'" Engquist v. Oregon Dept. of Agriculture, ___ U.S. ___, 128 S.Ct. 2146, 2152, 170 L.Ed.2d 975 (2008) (quoting McGowan v. State of Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961)). In such selective enforcement cases, the plaintiff generally alleges that he or she has been "arbitrarily classified as members of an 'identifiable group.'" Id. (quoting Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979)).

However, the Supreme Court has also recognized a "class of one" equal protection claim, in which the plaintiff does not allege class-based discrimination, but rather that he or she has been irrationally singled out as a "class of one." Village of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam). Since plaintiff does not allege that she is a member of an "identifiable group" against whom defendants have discriminated, her complaint can only be read to allege a "class of one" equal protection claim, i.e. that defendants had intentionally treated her differently from others similarly situated and that there is no rational basis for the difference in treatment.

Recently, in Engquist, 128 S.Ct. 2146, the Supreme Court limited the circumstances

11

under which a "class of one" equal protection can be stated. The Supreme Court noted that what was significant to the holding in Olech "was the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed." Id. at 2153. The Supreme Court further noted that in Olech, which involved governmental regulation of property, there was no indication "that the zoning board was exercising discretionary authority based on subjective, individualized determinations * * *." Id. The Supreme Court then contrasted Olech, and the cases upon which it relied, with cases involving state action "which by [its] nature involve[s] discretionary decisionmaking based on a vast array of subjective, individualized assessments." Id. at 1254. According to the Supreme Court:

> "[i]n such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.
>
> * * *
>
> This principle applies most clearly in the employment context, for employment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify. * * *. Unlike the context of arm's-length regulation, such as in Olech, treating seemingly similarly situated individuals differently in the employment context is par for the course.
>
> Thus, the class-of-one theory of equal protection- which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review- is simply a poor fit in the public employment context. To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship. * * *.
>
> * * * [W]e have never found the Equal Protection Clause implicated * * * where, as here, government employers are alleged to have made an individualized,

12

> subjective personnel decision in a seemingly arbitrary or irrational manner.
>
> * * *
>
> If * * * plaintiffs need not claim discrimination on the basis of membership in some class or group, but rather may argue only that they were treated by their employers worse than other employees similarly situated, any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis for a federal constitutional claim. Indeed, an allegation of arbitrary differential treatment could be made in nearly every instance of an assertedly wrongful employment action * * * on the theory that other employees were not treated wrongfully. * * *."

Id. at 1254-1256.

Following Engquist, in order to state an equal protection "class of one" claim, a plaintiff must allege (1) that she was treated differently from others similarly situated in all relevant respects; (2) that defendants had no rational basis for the differential treatment, see Olech, 528 U.S. at 564, 120 S.Ct. 1073; and (3) that the differential treatment resulted from a non-discretionary state action, Engquist, 128 S.Ct. at 2154. The Engquist holding has been applied by courts to any discretionary determination by decisionmakers, even outside the public employment context. See, e.g. Vassallo v. Lando, No. 06-CV-2520, 2008 WL 4855826, at * 8 (E.D.N.Y. Oct. 31, 2008)(involving a discretionary decision by the School District and its personnel as to which students should be interviewed and/or searched regarding a fire that had been set in a boys' bathroom); Analytical Diagnostic Labs, Inc. v. Kusel, No. 07 Civ. 3908, 2008 WL 4222042, at * 4 (E.D.N.Y. Sept. 15, 2008) (involving a discretionary decision by Department of Health personnel to, *inter alia* investigate, charge, impose a civil penalty, delay the issuance of permits and subject the plaintiff laboratory to a string of inspections for its non-forensic testing).

Pursuant to Engquist, since the decision of defendants to impose a TIP on plaintiff in an

13

attempt to improve her pedagogical performance was discretionary, and since plaintiff's claim is brought against a public employer based on allegations that it treated her differently than other similarly situated employees, plaintiff cannot state a "class of one" equal protection claim as a matter of law. See, e.g. Appel v. Spiridon, 531 F.3d 138, 141 (2d Cir. 2008) (reversing an order granting a preliminary injunction in favor of the plaintiff, a tenured professor, on her "class of one" equal protection claim alleging that she was suspended without pay for refusing to undergo a psychiatric examination in light of Engquist's holding that the Equal Protection Clause does not apply to a public employee asserting a "class of one" claim); Pignanelli v. Pueblo School District No. 60, 540 F.3d 1213, 1220 (10th Cir. 2008) (holding that the equal protection "class of one" claim of the plaintiff-teacher, that defendants did not renew her employment contract with the school district, was not a legally cognizable cause of action in light of Engquist); Carone v. Mascolo, 573 F.Supp.2d 575, 592 (D.Conn. 2008) (holding that the "class of one" equal protection claim of the plaintiff, a tenured teacher, challenging the issuance of a letter of reprimand and a two-day suspension, was no longer viable in light of Engquist's holding that such claims are unavailable to public employees). Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's equal protection claim (second cause of action) is granted and that claim is dismissed.

III.    Conclusion

For the reasons stated herein, defendants' motion is granted and the complaint is dismissed in its entirety with prejudice.

SO ORDERED.

/s/ SANDRA J. FEUERSTEIN
SANDRA J. FEUERSTEIN
United States District Judge

Dated: November 20, 2008
Central Islip, N.Y.